## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Mark Moorehead,

        Plaintiff,

v.                                        Case No. 1:19-cv-5155-MLB

Ryder Truck Rental, Inc. and John
Does 1–5,

        Defendants.

_____/

## <u>OPINION & ORDER</u>

Plaintiff Mark Moorehead sued Defendants Ryder Truck Rental, Inc. and John Does 1–5. (Dkt. 1-1.) Defendant moves for summary judgment (Dkt. 54)[1] and oral argument (Dkt. 56). The Court grants summary judgment and denies the request for oral argument.[2]

---

[1] Defendant filed a motion for summary judgment (Dkt. 53) and an amended motion for summary judgment (Dkt. 54). The Court **DENIES** the original motion **AS MOOT** (Dkt. 53).

[2] The parties have submitted briefs that comprehensively address the issue on summary judgment. Given the extensive briefing on the issue, the Court finds that Defendant's motion for summary judgment can be resolved on the written record. Accordingly, the request for oral argument (Dkt. 56) is **DENIED.**

## I.     Background

### A.     The Court's Use of Proposed Facts and Responses

The Court uses the parties' proposed facts and responses as follows. When a party does not dispute the other's fact, the Court accepts it for purposes of summary judgment and cites the proposed fact and corresponding response.  When one side admits a proposed fact in part, the Court includes the undisputed part.  When one side denies the other's proposed fact in whole or in part, the Court reviews the record and determines whether a factual dispute exists.  If the denial lacks merit, the Court deems the fact admitted so long as the record citation supports it.  If a fact is immaterial, it is excluded.[3]  If a fact is stated as an issue or legal conclusion, it is excluded.  *See* LR 56.1(B)(1)(c), NDGa.  Where appropriate, the Court modifies one party's fact per the other's response when the latter better reflects the record.  Finally, as needed, the Court

---

[3] Some proposed facts the Court declines to exclude on materiality grounds are not "material" as that term is generally employed in the summary judgment context.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (identifying material facts as those that "might affect the outcome of the suit under the governing law").  Some are included for background purposes or to generate context for the Court's analysis.  Which facts ultimately prove material should be apparent from the analysis.

draws some facts directly from the record.  *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

For its factual review, the Court considered Defendant's statement of undisputed material facts (Dkt. 54-1) and Plaintiff's response thereto (Dkt. 62).[4]  The Court did not consider Plaintiff's statement of additional facts (Dkt. 63) because all four proposed facts listed in it are not supported by a citation to evidence, as required by the Local Rules.  *See* LR 56.1(2)(b) (requiring a statement of additional facts to comply with Local Rule 56.1(B)(1)); LR 56.1(B)(1) (explaining that the Court will not consider any fact that is not supported by a citation to evidence).  The Court also did not consider Defendant's reply to Plaintiff's response to Defendant's statement of undisputed material facts (Dkt. 69-1).  As several judges in this District have noted, the Local Rules do not provide for reply filings in further support of a party's own statement of material

---

[4] While the Court considered Plaintiff's response to Defendant's statement of undisputed material facts, the Court overruled many of Plaintiff's objections (and thus deemed many of Defendant's facts admitted) because the objections did not comply with Local Rule 56.1(B)(2)(a)(2).  Indeed, many of Plaintiff's objections were argumentative, speculative, and/or cited no evidence.

facts. *See Shenzhen Shenchuang Elec. Appliance Co. v. HauteHouse, LLC*, No. 1:20-CV-05337-SCJ, 2021 WL 5033823, at *1 n.2 (N.D. Ga. Sept. 1, 2021); *Moore-Tolden v. AirTran Airways, Inc.*, No. 1:07-CV-1654-WSD-SSC, 2009 WL 10666355, at *2 (N.D. Ga. July 2, 2009), *adopted by* 2009 WL 10669476 (N.D. Ga. Aug. 28, 2009). And these judges have opted to ignore any such filings. *See, e.g.*, *Shenzhen*, 2021 WL 5033823, at *1 n.2; *Scott v. Novartis Pharms., Corp.*, No. 1:14-cv-04154-ELR-RGV, 2017 WL 5197875, at *2 (N.D. Ga. Jan. 31, 2017), *adopted by* 2017 WL 5382139 (N.D. Ga. Mar. 13, 2017). This Court follows suit and ignores Defendant's reply filing (Dkt. 69-1).

## B.    Facts

Plaintiff worked as a truck driver for McLane Company, primarily in the delivery of food and supplies to restaurants. (Dkt. 1-1 ¶ 8.) Defendant leased to McLane all the trucks and trailers Plaintiff drove. (Dkts. 1-1 ¶¶ 8–9; 54-1 ¶ 1; 62 ¶ 1.)[5] On October 20, 2017, Plaintiff was

---

[5] The Standing Order provides: "[A] party responding to a statement of material facts shall copy into its response document the numbered statement to which it is responding and provide its response to that statement immediately following." (Dkt. 51 ¶ r(2).) Plaintiff did not copy into his response document the numbered statement to which he was responding. (*See* Dkt. 62.) The Court admonishes Plaintiff for violating the Standing Order. The rules are pretty clear and should be followed.

working inside a trailer after having made a delivery for McLane.  (Dkts. 1-1 ¶¶ 8–9; 54-1 ¶ 1; 62 ¶ 1.)  Plaintiff alleges a metal rail used to strap or otherwise secure cargo inside the trailer—referred to by the parties as an "e-track"—came loose from the wall, causing the cargo to fall on him. (Dkts. 1-1 ¶ 9; 54-1 ¶ 2; 62 ¶ 2.)  He has a photograph showing the inside of the trailer, the loose e-track, and toppled over boxes.  (*See* Dkt. 64-4.)[6] He says he was injured in the incident.  (Dkt. 1-1 ¶¶ 9, 13.)  He also says Defendant was responsible for maintaining the e-track and is thus liable for his injuries.  (*See generally* Dkt. 1-1.)

Defendant does not install e-tracks in trailers or trucks.  The truck and trailer manufacturers install them before delivery to Defendant. (Dkts. 54-1 ¶ 3; 62 ¶ 3.)  They secure e-tracks to the walls of the trucks and trailers using pop rivets or screws.  (Dkts. 54-1 ¶ 3; 62 ¶ 3.)  There is no regular maintenance schedule for e-tracks; they are simply fixed when damaged.   (Dkts. 54-1 ¶ 9; 62 ¶ 9.)   Nevertheless, Defendant had a contractual obligation with McLane to perform preventive maintenance inspections on all trucks and trailers (including the trailer at issue here)

---

[6] Defendant does not contest Plaintiff's claim that the photograph shows the aftermath of the incident in which he was allegedly injured.

about every 90 days and (as part of that) to identify any necessary repairs.  (Dkts. 54-1 ¶ 6; 62 ¶ 6.)

Nicholas Kinder, a former employee of Defendant, testified that a problem with an e-track is indicated by a gap between the e-track and the wall, a missing rivet, or a rivet that is "loose and pulled out." (Dkts. 54-1 ¶ 13; 62 ¶ 13.)  When an e-track became damaged, Defendant typically sent the trailer to the manufacturer or some other facility for necessary repairs.  (Dkts. 54-1 ¶ 10; 62 ¶ 10.)  Sometimes Defendant repaired an e-track itself.  (Dkts. 54-1 ¶ 10; 62 ¶ 10.)  A properly repaired e-track would be equally secure as a newly installed one.  (Dkts. 54-1 ¶ 30; 62 ¶ 30.)

Defendant would typically learn of an issue with an e-track when, first, a McLane driver listed the issue on a daily vehicle inspection report ("DVIR") and, second, McLane provided the report to Defendant.  (Dkts. 54-1 ¶ 14; 62 ¶ 14.)  Plaintiff testified that he filled out DVIRs daily, with one copy staying with the trailer, one copy going to McLane management, and one copy being placed in a tray in the drivers' room for transmission to Defendant.  (Dkts. 54-1 ¶ 15; 62 ¶ 15.)  Plaintiff does not know who gave DVIRs to Defendant, how often they were transmitted, or who at

6

Defendant received them.  (Dkts. 54-1 ¶ 15; 62 ¶ 15.)  Plaintiff had seen e-tracks broken or loose from trailer walls and noted that damage on DVIRs but does not know whether anyone at McLane provided the DVIRs to Defendant.  (Dkts. 54-1 ¶ 16; 62 ¶ 16.)  Plaintiff testified he never discussed any problems with e-tracks with anyone at Defendant.  (Dkts. 54-1 ¶¶ 16, 18; 62 ¶¶ 16, 18.)

An e-track might become detached from a trailer wall for any number of reasons, including because someone improperly loads or overloads a trailer, overtightens straps connected to an e-track, or drives and turns too fast.  (Dkts. 54-1 ¶ 20; 62 ¶ 20.)[7]  One could also be damaged if a load shifts during transit.  (Dkts. 54-1 ¶ 20; 62 ¶ 20.)  Kinder testified that an e-track would not come off a wall if a trailer is loaded properly and driven safely.  (Dkts. 54-1 ¶ 21; 62 ¶ 21.)  On October 19, 2017—the day before the alleged incident—McLane disciplined Plaintiff for driving too fast while making a 90-degree turn.  (Dkts. 54-1 ¶ 22; 62 ¶ 22.)  No

---

[7] Plaintiff's three-page response to Defendant's proposed fact number 20 is an example of the inappropriateness of Plaintiff's objections.  The Federal Motor Carrier Safety Regulations are not evidence, Plaintiff's attorney's opinion about the proximate cause of Plaintiff's injury is irrelevant, and the suggestion that Defendant bears the burden of proving this case is contrary to the law.  (Dkt. 62 ¶ 20.)

evidence suggests this damaged the e-track because, as the Court states repeatedly below, the record contains no evidence from which a jury could conclude how or when the e-track came loose.

The trailer at issue in this case was always in McLane's possession, except when McLane brought it to Defendant for service. (Dkts. 54-1 ¶ 4; 62 ¶ 4.)   Pursuant to its contractual duty, Defendant performed a maintenance inspection on the trailer at issue on April 6, 2017 and July 26, 2017. (Dkts. 54-1 ¶ 11; 62 ¶ 11.) After the July inspection, Defendant serviced the trailer on September 8th, September 26th, and October 5th of 2017. (Dkts. 54-1 ¶ 11; 62 ¶ 11.) No evidence suggests the e-track was loose or malfunctioning at any of these times.   Plaintiff was not sure whether he ever saw or reported a problem with the e-track in the trailer at issue here. (Dkts. 54-1 ¶ 17; 62 ¶ 17.)

While at McLane, Plaintiff picked up trailers once they were already loaded, so there was no way for him to see whether the cargo was loaded or secured properly inside the trailer. (Dkts. 54-1 ¶ 26; 62 ¶ 26.) Plaintiff does not know how or why the e-track at issue came off the trailer wall or whether the e-track was still attached to the wall when he began his shift on October 20, 2017. (Dkts. 54-1 ¶ 23; 62 ¶ 23.)  Plaintiff

also does not know whether bolts or screws were missing or had begun to loosen before the incident.  (Dkts. 54-1 ¶ 24; 62 ¶ 24.)  In short, the undisputed evidence shows the e-track failed and allowed the cargo to fall on him.  But the record contains no evidence as to when that failure occurred, that Defendant should have seen such damage during a contractually required inspection, that anyone reported such a failure on a DVIR, or that Defendant received notice of any issue with the e-track in Plaintiff's trailer before the incident at issue here.

## II.    Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson*, 477 U.S. at 248).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing there is a genuine dispute for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. A district court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112,

1115 (11th Cir. 1993) (alteration adopted) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## III.  Discussion

Plaintiff sued Defendant for negligence, alleging Defendant breached its duty to install properly the e-track, inspect the trailer, fix an issue with the e-track, and warn Plaintiff of the danger associated with the e-track assembly, including the risk that it would separate from the trailer and spill pallets onto Plaintiff.  (Dkt. 1-1 ¶¶ 15–20.)  "It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages."  *Collins v. Athens Orthopedic Clinic, PA*, 837 S.E.2d 310, 312 (Ga. 2019).  The lack of a genuine issue of material fact on any of the elements requires entry of summary judgment for the defendant.  *Patterson v. Wright*, 840 S.E.2d 762, 763 (Ga. Ct. App. 2020).  Defendant argues it is entitled to summary judgment because there is no genuine issue of material fact as to duty, breach, or proximate cause.  (Dkt. 54 at 8.)

## A.    Duty

"[A] legal duty is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm." *Rasnick v. Krishna Hosp., Inc.*, 713 S.E.2d 835, 837 (Ga. 2011). Such a duty can arise by statute, common law, or contract. *See id.*; *Brookview Holdings, LLC v. Suarez*, 645 S.E.2d 559, 564 (Ga. Ct. App. 2007). The existence of a legal duty is a question of law for the court. *Rasnick*, 713 S.E.2d at 837. Without any legal duty, there can be no fault or negligence. *Sheaffer v. Marriott Int'l, Inc.*, 826 S.E.2d 185, 188 (Ga. Ct. App. 2019).

Defendant argues Plaintiff has identified no statute or case law imposing a duty on it and Plaintiff was not a party to the contract between it and McLane. (Dkt. 54 at 9.) While somewhat unclear, Plaintiff seems to argue Defendant owed him a duty as a third-party beneficiary under Defendant's lease agreement with McLane or because of duties imposed on Defendant by certain federal regulations. (Dkt. 66 at 7–9.) The Court rejects both arguments.

### 1.   Contract

For an individual to be a third-party beneficiary of a contract, "it must clearly appear from the contract that [the contract] was intended for his benefit." *Armor Elevator Co. v. Hinton*, 443 S.E.2d 670, 672 (Ga. Ct. App. 1994). "[T]he mere fact that [a party] would benefit from performance of the contract is insufficient" to make that person a third-party beneficiary of the contract. *Kaesemeyer v. Angiogenix, Inc.*, 629 S.E.2d 22, 25 (Ga. Ct. App. 2006). Thus, "in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury." *Armor Elevator*, 443 S.E.2d at 672–73.

It is undisputed that the contract at issue in this case was between McLane and Defendant.[8] (Dkts. 54 at 9; 66 at 8.) Defendant argues no evidence suggests the contract was intended to confer a benefit on

---

[8] The face of the contract says it is between Defendant and Transco, Inc. (Dkt. 61-1 at 1.) But, according to Plaintiff, McLane is the parent company of Transco, Inc., and McLane's leases were in the contract. (Dkt. 66 at 8.)

Plaintiff—in other words, that it owed no duty to Plaintiff arising from the contract.  (Dkt. 54 at 11.)  Plaintiff seems to contend paragraph 2(A) of the contract binds Defendant to provide preventive maintenance inspections and the federal annual safety inspection.  (Dkt. 66 at 8.) Plaintiff also argues Defendant's contention Plaintiff is not an intended beneficiary is "ludicrous" because "clearly" the federally required inspections are for the protection of both operators of the equipment and the public that shares the highway with Defendant's vehicles.  (*Id.* at 9.)

Paragraph 2(A) of the contract requires Defendant to supply all maintenance, repairs, and inspections "required to keep the [v]ehicles in good operating condition."  (Dkt. 61-1 ¶ 2(A).)  As part of this, Defendant agreed to visually inspect the vehicles (including the trailer at issue here), replace each vehicle's oil and oil filter, lubricate each chassis, prepare the legally required maintenance records, perform the federal annual safety inspection, provide emergency roadside assistance, and track repair and recall notices.  (*Id.*)  It also sets requirements for when McLane is required to bring vehicles in for inspections and the terms for repairs by third parties.  (*Id.*)

The maintenance provision contains no language making it "apparent" Defendant and McLane "intended to confer a direct benefit upon . . . [P]laintiff to protect him from physical injury." *Armor Elevator*, 443 S.E.2d at 673. It simply shows Defendant agreed to maintain the vehicles for McLane's benefit and use without any consideration of Plaintiff or anyone in his position. The provision thus creates no enforceable duty to support Plaintiff's claim. *See Donnalley v. Sterling*, 618 S.E.2d 639, 641 (Ga. Ct. App. 2005) ("[A]lthough the third-party beneficiary does not need to be specifically named in the contract, the contracting parties' intention to benefit the third party must be shown on the face of the contract."). Obviously, preventive maintenance inspections and other terms of the contract help keep the vehicles in good working order, including by identifying and repairing broken or unstable e-tracks. That, of course, might benefit anyone associated with the trailer by preventing loads from shifting or falling. But any such benefit to Plaintiff was merely incidental to the contract and thus did not create an enforceable duty. *See, e.g.*, *Gay v. Ga. Dep't of Corr.*, 606 S.E.2d 53, 57–58 (Ga. Ct. App. 2004). To hold otherwise would read the "intended" requirement out of third-party intended beneficiary law.

15

The rest of the contract confirms the Court's conclusion that McLane and Defendant contracted for the purpose of establishing their rights against each other without any consideration of Plaintiff or anyone in his position.  The contract includes details about which vehicles Defendant will provide, when McLane may alter the vehicles, how the vehicles will be replaced, Defendant's rights to provide substitute vehicles, and Defendant's obligation to wash the vehicles, arrange for painting and lettering on the vehicles, maintain each vehicle's state license, and pay the cost of registering each vehicle.  (*See* Dkt. 61-1.)  A series of provisions controls when Defendant must provide fuel for the vehicles, its obligation to apply for fuel tax permits, its need to properly file fuel tax returns and pay fuel taxes, and its liability to McLane if it provides inaccurate information.  (*Id.* ¶¶ 3(A)–(E).)  The same provision sets forth McLane's ability to utilize self-service fueling equipment at Defendant locations, its obligation to clean up any spills its employees cause at the facilities, and its related liability to Defendant for the cost of any such fuel or damage to the facility.  It also explains Defendant's obligation to provide daily fuel inventories to McLane, and Defendant's representation that its facilities are in compliance with all state and

federal environmental laws.  (*Id.*)  Other provisions control how McLane uses the vehicles, where it may use them, prohibited uses, qualifications for drivers, McLane's responsibility for taxes, fees, and tolls resulting from its use of the vehicles, refrigeration and milage charges, computation of other charges and McLane's payment terms, audit rights, insurance obligations, procedures to follow when a vehicle is stolen or damaged, liability for cargo loss, indemnification requirements, and a host of other topics to control the parties' relationship.  (*Id.* ¶¶ 4–19.) Again, nothing in these provisions suggests Defendant and McLane intended to benefit Plaintiff or to create any obligations to him (or someone like him).

The Court concludes Plaintiff is not a third-party beneficiary under the contract and Plaintiff cannot rely upon the contract to support his claims against Defendant.

### 2.    Regulation

In an attempt to identify a legal duty Defendant owed to him, Plaintiff relies on various provisions of the Federal Motor Carrier Safety Act.  Specifically, Plaintiff cites what he calls the "Cargo Securement Rules," which set requirements for securing cargo and minimum

performance criteria for devices and systems.  (Dkt. 66 at 8–9 (citing 49 C.F.R. § 393.100).)  Plaintiff says that, in the light of Defendant's contractual obligation to perform preventive maintenance and the federal annual safety inspection, these regulations impose upon Defendant a duty to ensure the e-track system functioned properly.  (*Id.*) Plaintiff adds that Defendant's duty extends to him pursuant to O.C.G.A. § 51-1-6, which provides:

> When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.

In *Branch Banking & Trust Co. v. Morrisroe*, 746 S.E.2d 859, 861 (Ga. Ct. App. 2013), the Court of Appeals of Georgia explained that a duty cannot rest solely on O.C.G.A. § 51-1-6 because it merely sets forth general principles of tort law.  So Plaintiff relies on the cargo securement regulations as the basis for the legal duty underlying his claim.

The Cargo Securement Rules Plaintiff cites are regulations found in a portion of the Federal Motor Carrier Safety Regulations entitled "Parts and Accessories Necessary for Safe Operation."  49 C.F.R. § 393.100, et seq.  That part establishes minimum standards for

commercial motor vehicles and provides that "[n]o motor carrier may operate a commercial motor vehicle, or cause or permit such vehicle to be operated, unless it is equipped in accordance with the requirements and specifications of this part."  49 C.F.R. § 393.1(c).  Defendant argues the part containing the cargo securement provisions does not apply to it because Plaintiff was the commercial vehicle operator, McLane was the motor carrier, and Defendant was not involved in operating the trailer at all.  (Dkt. 69 at 6.)  Defendant contends that the cargo securement provisions themselves make it even more clear they do not apply to it. (*Id.*)  For example, 49 C.F.R. § 393.102, which sets forth the "minimum performance criteria for cargo securement devices and systems," states:

> The means of securing articles of cargo are considered to meet the performance requirements of this section if the cargo is:
>
>> (1) Immobilized, such so that it cannot shift or tip to the extent that the vehicle's stability or maneuverability is adversely affected; or
>>
>> (2) Transported in a sided vehicle that has walls of adequate strength, such that each article of cargo within the vehicle is in contact with, or sufficiently close to a wall or other articles, so that it cannot shift or tip to the extent that the vehicle's stability or maneuverability is adversely affected; or
>>
>> (3) Secured in accordance with the applicable requirements of §§ 393.104 through 393.136.

49 C.F.R. § 393.102(c).  Defendant contends that, as the mere lessor of the trailer who had no involvement in the loading, securing, or transportation of cargo, it could not have ensured that the lessee "immobilized" cargo carried by the lessee's employee in the trailer "so that it [could not] shift or tip."  (Dkt. 69 at 7.)  Similarly, Defendant contends that it could not have ensured that the cargo transported by Plaintiff for McLane was "sufficiently close to a wall or other articles, so that it [could not] shift or tip" on October 20, 2017, particularly because Defendant last inspected the trailer in July 2017 (about three months before the incident).  Plaintiff did not respond to this common-sense argument or explain how or why these cargo securement provisions apply to an entity in Defendant's position.  (*See generally* Dkt. 66.)[9]

---

[9] Another portion of the Cargo Securement Rules states minimum performance criteria for tie down assemblies and fastening devices like rope, chains, and strapping used inside a vehicle to secure cargo.  That provision says the tie downs must be used and maintained in a way that the forces acting on them under certain acceleration and deceleration forces (caused by the movement of the vehicle) do not exceed the manufacturer's breaking strength rating.  49 C.F.R. § 393.102(a)(1).  Again, as a lessor of the trailers with no involvement in application or use of tie downs inside vehicle, Defendant could not possibly be responsible for compliance with these standards.

The Court agrees that these regulations imposed no duty on Defendant to ensure the proper securing of cargo in the trailer Plaintiff was using.  The Federal Motor Carrier Safety Regulations, which contain the cargo securement provisions, apply to motor carriers and their employees who operate commercial motor vehicles, not companies that lease trailers to motor carriers.  *See, e.g., Slaton v. Climax Molybdenum Co.*, --- F. Supp. 3d ----, 2021 WL 4056819, at *6 (S.D. Iowa July 29, 2021) ("[T]he FMCSR imposes obligations on carriers and drivers, not shippers. For example, 49 C.F.R. § 393.1(b)(1) states that '[e]very *motor carrier and its employees* must be knowledgeable of and comply with the requirements and specifications of this part' . . . . Shippers are not mentioned."); *Locicero v. Interpace Corp.*, 266 N.W.2d 423, 427 (Wis. 1978) ("[M]otor carrier safety regulations impose a clear duty on the carrier to secure the load safely . . . .").[10]  As such, the Court concludes

───────────────

[10] The Court's conclusion is buttressed by the way the Federal Motor Safety Administration has regulated the use of non-owned equipment by motor carriers to ensure that the motor carrier is fully responsible for the vehicle's operation.  Under current law, the lessee of a leased trailer is required to "assume complete responsibility for the operation of the equipment for the duration of the lease."  49 C.F.R. § 376.12(c)(1); *see also Hot Shot Express, Inc. v. Assicurazioni Generali, SPA*, 556 S.E.2d 475, 477 (Ga. Ct. App. 2001).

the regulations imposed no duty on Defendant so as to support Plaintiff's

negligence claim.[11]

Because Defendant did not owe Plaintiff a legal duty as a result of

either its contract with McLane or the federal regulations cited by

Plaintiff, Defendant is entitled to summary judgment.[12]

---

[11] Because the Court concludes the Cargo Securement Rules do not apply to Defendant, the Court does not decide whether this is the type of regulation that could otherwise satisfy O.C.G.A. § 51-1-6 so as to provide Defendant a cause of action under the specific facts at issue here.  It is worth noting, however, that the stated purpose of the rules is to prevent cargo from "leaking, spilling, blowing[,] or falling" from a motor vehicle while being transported "on public roads" and to prevent "shifting" of a load "within the vehicle to such an extent that the vehicle's stability or maneuverability is adversely affected."  49 C.F.R. § 393.100(b)–(c).  In as much as the regulations focus on road safety, it seems a stretch to say the regulations require a motor carrier to do something for the benefit of someone like Plaintiff who was not injured after cargo spilled on the road or made his vehicle unstable.  In other words, it does not appear these regulations were intended to protect a driver from the movement of cargo in a stationary vehicle on private property.

[12] In opposing summary judgment, Plaintiff refers to Defendant's obligation under the contract to perform mandatory, annual federal inspections.  As stated, the Court concludes Plaintiff is not a third-party beneficiary of that contract.  The Court notes that 49 C.F.R. § 396.3 states "[e]very motor carrier and intermodal equipment provider must systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to its control."  49 C.F.R. § 396.3.  The term "intermodal equipment provider" is defined as "any person that interchanges intermodal equipment with a motor carrier pursuant to a written interchange agreement or has a contractual responsibility for the

**B.    Breach and Causation**

Because there is no genuine issue of material fact as to duty, the Court need not address Defendant's breach and causation arguments. But, even assuming Plaintiff's version of the duty owed—specifically, that Defendant "had the obligation to perform an inspection of the e-tracks which was adequate to determine that the minimum cargo securement demands were met" (Dkt. 66 at 13)—Plaintiff's claims still fail because the record contains no evidence from which a jury could conclude Defendant breached any such duty or that its breach caused the cargo to fall on Plaintiff.

At summary judgment, Plaintiff contends Defendant failed to produce any evidence its inspections of the trailer were adequate.  (Dkt. 66 at 9–10.)  Plaintiff's allegation demonstrates a misunderstanding of the law.  Under Georgia law, a plaintiff bears the burden of proving each

_____

maintenance of the intermodal equipment."   49 U.S.C. § 31151(f)(3). Perhaps Defendant falls under this provision as a result of its lease agreement with McLane.  The Court offers no opinion on that as Plaintiff does not raise this argument or cite any of these regulations in its papers. But, even if these regulations applied to Defendant and even if they created some enforceable obligation to Plaintiff under O.C.G.A. § 51-1-6, Plaintiff's claim would still fail for lack of evidence from which a jury could conclude Defendant breached any such obligation or that its breach caused any injury to Plaintiff.  *See infra* Section III.B.

element of his or her negligence claim. *Wolfe v. Carter*, 726 S.E.2d 122, 125 (Ga. Ct. App. 2012). This means Defendant need not show its inspections were adequate; instead, Plaintiff must prove Defendant breached its obligations. Granted, Defendant (as the party seeking summary judgment) "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Invs. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 323). Since Plaintiff (the nonmoving party) would have the burden of proof at trial, there are two ways for Defendant to meet its initial burden. *Ellison v. Hobbs*, 334 F. Supp. 3d 1328, 1338 (N.D. Ga. 2018) (citing *Four Parcels*, 941 F.2d at 1437–38). "The first is to produce 'affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.'" *Id.* (quoting *Four Parcels*, 941 F.2d at 1438). "The second is to show that 'there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Four Parcels*, 941 F.2d at 1438). To avoid summary judgment, Plaintiff must then show that summary judgment is improper by coming forward with specific facts showing there is a genuine dispute for trial. *Matsushita Elec.*, 475 U.S. at 587.

24

Defendant has certainly carried its initial burden.  In regard to the breach element, Defendant has shown there is no evidence it failed to properly inspect the trailer or knew of any issue with the e-track before the incident.  Plaintiff testified that he was not sure whether he ever saw or reported an issue with an e-track in the trailer at issue.  (Dkts. 54-1 ¶ 17; 62 ¶ 17.)  There is no evidence Defendant missed an inspection that was required or that, during an inspection, it failed to identify a problem with a faulty e-track.  Defendant conducted two preventive maintenance inspections of the trailer in the six months before the incident (specifically on April 6, 2017 and July 26, 2017), and no evidence suggests anyone noted an issue with the e-track during either inspection.  (Dkts. 54-1 ¶ 11; 62 ¶ 11; 64-3 at 1–2 (noting "Total Vehicle" inspection on dates listed).)  Indeed, records for both inspections note Defendant inspected the e-track to make sure it was secured to the wall.  (Dkt. 64-3 at 15, 20.) Plaintiff cites no evidence to challenge the evidence mustered by Defendant or otherwise raise an issue of material fact as to whether Defendant failed to inspect the trailer properly (as required under Plaintiff's statement of Defendant's duty) or failed to fix a loose e-track.

Plaintiff says that, since Defendant serviced the trailer on September 8, September 26, and October 5, 2017 and since the service records do not indicate the exact work performed, the records "do[] not prove that [Defendant's] technician did not have an[] opportunity to examine or actually examine[d] the e-tracks." (Dkt. 62 ¶ 11.)  But again, that misses the point.  To survive summary judgment, the burden is on Plaintiff to present evidence from which a jury could conclude that Defendant somehow failed to properly inspect the e-tracks or failed to properly repair a broken e-track.  Lack of detail in these service records does not present evidence from which a jury could conclude the e-track was broken at the time and Defendant either failed to see it or failed to fix it properly.

All of this arises from the utter lack of evidence as to when the e-track came loose.  Plaintiff admitted that he does not know how or why the e-track came off the trailer wall or whether the e-track was still attached to the wall when he began his shift on October 20, 2017.  (Dkts. 54-1 ¶ 23; 62 ¶ 23.)  He also does not know whether bolts or screws were missing or had begun to loosen before the incident.  (Dkts. 54-1 ¶ 24; 62 ¶ 24.)  Ultimately, there is no evidence of when or why the e-track came

off the wall or what caused that to happen.  Absent evidence either that the e-track was loose at a time Defendant was required to inspect the trailer or that Defendant otherwise knew of a problem with the e-track prior to Plaintiff's injury, Plaintiff cannot show Defendant breached any duty it might have owed.

Plaintiff contends that "[a] jury can infer from the fact that the e-tracks were no longer attached to the interior wall of the trailer and the fact that there was no repair to the track prior to October 26, 2017 that a reasonable inspection of the trailer would have revealed the detached e-tracks depicted by the photo" taken after the incident.  (Dkt. 66 at 14.) That is pure speculation, and speculation, unsupported by evidence, cannot defeat summary judgment.  *Brown v. Publix Super Mkts., Inc.*, 626 F. App'x 793, 797 (11th Cir. 2015) (per curiam); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  Again, there is no evidence the e-track came loose prior to an inspection of the trailer by Defendant. What if the e-track broke during transportation of the very load Defendant was hauling?  Or what it if was just one day before?  There is no way Defendant's obligation was to guarantee the e-tracks operate properly on every single trip.

Plaintiff also argues a jury can infer that Defendant's inspections were inadequate because Defendant did not note any issue with the trailer's e-tracks on a form when it inspected the trailer on October 26, 2017 (six days after the incident). (Dkt. 66 at 15.) This, too, is pure speculation. As Defendant notes, there are numerous other explanations for why Defendant did not document an issue with e-tracks on October 26, 2017, including because the truck was loaded with cargo at the time or because someone (perhaps a McLane employee) removed the e-track after Plaintiff's incident. (Dkt. 69 at 10 n.23.) What happened after the accident provides no evidence from which a jury could conclude Defendant failed to fix the e-track after becoming aware of a problem with it or failed to properly inspect the e-track. Having reviewed the undisputed evidence in this case, the Court concludes Plaintiff has failed to present facts showing there is a genuine dispute as to whether Defendant breached any duty it might possibly have owed Plaintiff.

Proximate cause is another problem for Plaintiff. While the issue of proximate cause is usually a question for the jury, *Edwards v. Campbell*, 792 S.E.2d 142, 147 (Ga. Ct. App. 2016), proximate cause may be decided at summary judgment when "the evidence shows clearly and

palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the [plaintiff's] injuries," *Thurmond v. Fed. Signal Corp.*, 769 F. App'x 904, 906 (11th Cir. 2019) (per curiam).  Plaintiff asserts that the fact that the e-tracks are part of the cargo securement system that failed proves that Defendant's negligence was the proximate cause of Plaintiff's injury.  (Dkt. 66 at 19.) That is not true.  The e-track could have failed for any number of reasons, including overtightening during the loading process, a shift in cargo, bad driving and tight turns, or anything else that put excessive force on the e-track.  Defendant would only be liable—under Plaintiff's theory of the case—if it allowed a faulty e-track to be used either because it failed to conduct an adequate inspection or failed to properly repair an e-track.  As stated several times, Plaintiff has presented no evidence from which a jury could conclude this occurred. As a result, no jury could conclude Defendant's alleged negligence proximately caused the failure of the e-track.

## IV.   John Does 1–5

Plaintiff also sued John Does 1–5.  (Dkt. 1-1.)  Plaintiff does not even appear to assert any claims against John Does 1–5.  (*See id.*)

Plaintiff's complaint only contains one count for negligence, and Plaintiff specified in the complaint that it is only against Ryder Truck Rental, Inc. (*See id.* at 3.)  But to the extent he does assert claims against John Does 1–5, they are due to be dismissed.  "As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam).  Thus, claims against fictitious or non-existent parties are usually dismissed. *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019).  The Eleventh Circuit, however, "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to" make the fictitious name, "at the very worst, surplusage." *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).  This exception does not apply here.  The complaint describes John Does 1–5 as "yet unidentified parties who caused or contributed to Plaintiff Mark Moorehead's injuries."  (Dkt. 1-1 ¶ 4.)  That description fails to provide enough specificity to determine their identity. *Compare Richardson*, 598 F.3d at 738 (finding the complaint's description of John Doe—"John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute"—to be insufficient to identify the defendant among the many guards employed

at the Charlotte Correctional Institute), *with Dean*, 951 F.2d at 1216 (finding the complaint's description of John Doe—"Chief Deputy of the Jefferson County Jail"—to be sufficient to identify the head of the Jefferson County Jail). Accordingly, Plaintiff's description did not render his "John Does 1–5" label mere "surplusage." Thus, under the general rule, dismissal of any claims against John Does 1–5 is appropriate. *See Cook v. Corizon, LLC*, No. 2:17-CV-178-SMD, 2019 WL 2076392, at *6 (M.D. Ala. May 10, 2019) (sua sponte dismissing the defendants under the fictitious party pleading rule).

## V.    Conclusion

The Court **GRANTS** Defendant's amended motion for summary judgment (Dkt. 54).

The Court **DENIES AS MOOT** Defendant's original motion for summary judgment (Dkt. 53) and **DENIES** Defendant's request for a hearing (Dkt. 56).

Because Plaintiff's claims against Defendant fail, any subrogated claims of the would-be intervenors also fail. So the Court **DENIES AS MOOT** Indemnity Insurance Company of North America/ESIS's motion to intervene (Dkt. 41).

The Court sua sponte **DISMISSES** John Does 1–5.  With the dismissal of John Does 1–5, no defendants remain in this case.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 13th day of December, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE